**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ASSOCIATION DIOCÉSAINE DE PARIS<br><br>*Plaintiff,*<br><br>v.<br><br>ZAIDA M. MONTALVO-DIAZ, AURORA MONTALVO-DIAZ, MONTALVO & MONTALVO LLC, FRANCOIS G. BIDAULT, MAYER ASSOCIATES LLP, DR. JUAN MONTES-RUIZ; JOHN DOE I-X; JOINT TORTFEASORS DEF AND ABC INSURANCE COMPANY.<br><br>*Defendants.* | CASE NO.: _____<br><br><br><br>RE: DIVERSITY JURISDICTION; BREACH OF FIDUCIARY DUTY; BREACH OF CONTRACT; CONTRACTUAL BAD FAITH; DECLARATORY JUDGMENT; DAMAGES; CONTRACT NULLITY AND JURY TRIAL DEMAND. |

## <u>COMPLAINT</u>

**TO THE HONORABLE COURT:**

COMES NOW Plaintiff **Association Diocésaine de Paris** (hereinafter "Plaintiff" or "ADP"), through the undersigned counsel, and very respectfully STATES, ALLEGES, and PRAYS:

### I.   THE PARTIES

1.      The Plaintiff is an association established under the laws of the Republic of France and it administers the assets of the Catholic Church in the City of Paris and it is duly

authorized and empowered to represent the Catholic Church in the City of Paris in all legal matters.  ADP's principal offices are located in: 10 rue du Cloître Notre-Dame-75004 Paris, France.

2.      The Defendant Zaida Montalvo-Diaz resides is the City of San Juan in Puerto Rico. She is employed as a senior wealth advisor and Vice President of Popular One, a division of Banco Popular in San Juan, Puerto Rico.  By information and belief, Defendant Zaida Montalvo-Diaz's address is: 867 Muñoz Rivera Avenue, Vick Center Building, Suite B-401, San Juan, Puerto Rico 00925-2140. The Defendant Zaida Montalvo-Diaz was at all material times until December 2014 held out by the Defendant Montalvo & Montalvo LLC as a director and employee of the Defendant Montalvo & Montalvo LLC.

3.      The Defendant Aurora Montalvo-Diaz is an attorney and resides in the City of San Juan in Puerto Rico. By information and belief, Defendant Aurora Montalvo-Diaz's address is: 867 Muñoz Rivera Avenue, Vick Center Building, Suite B-401, San Juan, Puerto Rico 00925-2140.. The Defendant Aurora Montalvo-Diaz was at all material times until December 2014 held out by the Defendant Montalvo & Montalvo LLC as a director and employee of the Defendant Montalvo & Montalvo LLC.

4.      The Defendant Francois G. Bidault resides in the State of Connecticut in the United States. He is a businessman who served as Honorary Consul of France in Puerto Rico from February 1999 to February 2004. By information and belief, Defendant Francois G. Bidault's address is: 71 Malverne Road, Scarsdale, New York 10583.  The Honorary Consul of France in Puerto Rico reports to the Consulate General of France in Miami in the State of Florida. He is a director, officer or employee of the Defendant Mayer Associates

LLP . At all material times after he completed his term as Honorary Consul of France in Puerto Rico, the Defendant Bidault made representations to the Plaintiff that he was a "local professional" in San Juan, Puerto Rico.

5.      Mayer Associates LLP is a corporation incorporated under the laws of the State of Connecticut in the United States. By information and belief, its offices are located at: 327 Riverside Avenue, Westport, Connecticut 06880.  At all material times, it was used by the Defendant Bidault to invoice the Plaintiff for his services as a consultant.

6.      The Defendant Dr. Juan Montes-Ruiz is a resident of San Juan Puerto Rico and he is a medical professional.  By information and belief, Dr. Juan Montes-Ruiz's address is: Carretera 21 U3-4**,** Las Lomas**,** San Juan, Puerto Rico 00921.

7.     Defendants John Doe I-X are unknown individuals or entities who are responsible for the occurrences alleged herein and liable for Plaintiff's damages. They are fictitiously named herein to be later replaced by their actual names, which may become known through further discovery in this litigation.

8.     Defendants ABC Insurance Companies are unknown insurance companies which provided insurance coverage to Defendants for incidents occurring as alleged herein. They are fictitiously named herein to be later replaced by their actual names, which may become known through further discovery in this litigation.

9.     Joint Tortfeasors DEF are unknown joint tortfeasors who are jointly and severally responsible for the causes of action included herein. They are fictitiously named herein to be later replaced by their actual names, which may become known through further discovery in this litigation.

### III.   JURISDICTION AND VENUE

10.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (a) (2) since the parties are citizens of diverse States and a foreign country and the amount in controversy exceeds $75,000.00, exclusive of costs and interests.

11.   The venue is proper under 28 U.S.C. §1391 (a) and (b) since several Defendants are residents of this district, the events giving rise to the claims set forth herein occurred in this district, and a the real property that is the subject of one of the causes of action of the instant *Complaint* is situated in this district.

### IV.   THE FACTS

**A.   The initial involvement of Defendant Bidault in the affairs of Plaintiff**

12.   By a letter written in Spanish dated December 25, 2000, from Raul Gomez-Estremera, a lawyer and notary public in San Juan, Puerto Rico and addressed to the Defendant Bidault, as Honorary Consul of France, information is provided regarding the professional services required in respect to the administration of the Estate of Pierre Meyran and Andrée Meyran and the legal costs associated with these services. This letter specifies that the legal steps required in this matter can be completed within 90-120 days.

13.   By letter dated February 1, 2001, addressed to the Defendant Bidault as Honorary Consul of France in Puerto Rico, the Plaintiff provided initial information concerning its difficulties in exercising certain rights as beneficiary of the Estate of Pierre Meyran and Andrée Meyran (the "Meyran Estates"). The Defendant Bidault was asked for his assistance as a representative of the Republic of France.

14.     By letter dated February 5, 2001, to the Plaintiff sent by facsimile, the Defendant Bidault, acting as Honorary Consul of France in Puerto Rico, asks the Plaintiff to give to one person in Puerto Rico the authorization and power to sell the house and take care of the transfer of the proceeds of sale and transaction.  The Defendant Bidault then states that his request is urgent since the house could be sold in a public auction. In his words:

> "Nous avons besoin d'une réponse d'urgence sinon vous risquez que la maison soit vendue aux enchères."

15.     By a letter dated February 20, 2001, from the Plaintiff, it is confirmed that various cheques are to be prepared by the Plaintiff's bank, Société Générale, relating to the following payments: (a) CRIM (Spanish acronym for "Centro de Recaudacion de Ingresos Municipales"):  $8,833,03 US; (b) P.R.P.F.C (Puerto Rico Treasury Department):  $5,893,83 US, and (c) Monsieur Lopez $3,975,00 US.  The payment of these invoices was arranged by the Defendant Bidault, acting as Honorary Consul of France.

16.     In the spring of 2005, the Plaintiff was contacted by the Defendant Bidault in respect to its entitlement as a beneficiary of the Meyran Estates. The Defendant had received information concerning the Meyran Estates as a result of his position as Honorary Consul of France in Puerto Rico.

17.     By email dated October 5, 2005, addressed to the Plaintiff, the Defendant Bidault makes the following statement in respect to the Property:

> "Lorsque la maison aura titre de propriete portant le nom de votre Association nous recommandons de faire effectuer une estimatation (Appraisal report) pour connaitre la valeur de la maison. La valeur est bien superieure aux 500 000.00 US dollars estime par Mr Meyran en 1995…Cette maison a une tres bonne location devant la mer dans un endroit qui est recherche…Elle peut etre

vendue sans Agence et vous pouvez eviter de payer les 5% de commission sur le prix de vente comme mentionne dans le testament de Mr. Meyran."

18.      The Defendant Bidault was replaced as Honorary Consul of France in Puerto Rico in November 2004 by Dr. Marc Jean-Bernard.

19.      As a result of the Defendant Bidault's offer to provide "local support" to the Plaintiff, he sent a number of emails in 2005 to the Plaintiff with descriptions of the Property and references to a number of concerns in respect to the Property.

20.      By letter dated October 20, 2005 addressed to Maître Jean-Pierre Franken, Dr. Marc Jean-Bernard, acting as Honorary Consul of France in Puerto Rico, states that he has received a telephone call from the Defendant Bidault in respect to the Meyran Estates in Puerto Rico and the entitlements of the Plaintiff as beneficiary.   In his letter, Mr. Jean-Bernard underlines the fact that the Defendant Bidault seemed very agitated and almost impossible to understand during this telephone conversation. The Defendant Bidault seemed very upset about the involvement of the new Honorary Consul of France in the affairs of the Plaintiff. In the words of the Honorary Consul, Mr. Jean-Bernard:

> "L'ancien consul honoraire, Monsieur Francois Bidaul[l]t, nous a téléphoné *ex abrupto*. De ses explications à peine intelligibles et fort agitées, il appert qu'il soit aujourd'hui fort embarassé par le fait que je me sois communiqué avec vous, à la demande expresse du Consulat Général, et en général avec toutes les parties mentionnées dans mon dossier. Notre seul dessein est, pour notre part, le droit."

21.      In his letter of October 20, 2005, the Honorary Consul of France, Dr. Jean-Bernard, also emphasizes his position regarding the involvement of the Defendant Bidault in the affairs of the Plaintiff in Puerto Rico. In this letter, he stresses that the Defendant Bidault is acting in a private capacity and against the opinion of the Consulate

General of France and that this is the case in this matter and other similar matters. The Honorary Consul of France expresses his strong objections and concerns about the involvement of the Defendant Bidault in the Puerto Rico case of the Plaintiff as follows:

> "Enfin Monsieur Bidault, qui agit aujourd'hui à titre privé et d'ailleurs *contre l'avis du Consulat Général de France, dans ce cas comme dans d'autres cas similaires…*".

The Honorary Consul of France, Dr. Marc Jean-Bernard, adds in this letter that he is extremely perplexed in respect to the actions of the Defendant Bidault in the circumstances and he underlines the fact that the Defendant Bidault is also involved in other succession matters in Puerto Rico. The concerns of Dr. Marc Jean-Bernard are expressed as follows:

> « Est-il enfin nécessaire de vous préciser notre extrême (et toute officielle) perplexité concernant les agissements de Monsieur Francois Bidault en la circonstance, lequel se trouve également impliqué à titre privé dans d'autres affaires de succession à Puerto Rico. »

22.     From the date of the execution of the Power of Attorney appointing Montalvo & Montalvo LLC as trustee, fiduciary, and attorney of the Plaintiff in respect to its entitlements under the Meyran Estates in Puerto Rico, the Defendant Bidault demanded that all communications with the Defendants Zaida Montalvo-Diaz, Aurora Montalvo-Diaz and Montalvo & Montalvo LLC be transmitted through him. The Defendant Bidault made sure at all material times that the services rendered by other professionals were first reported to him and then to the Plaintiff. For instance, by an email dated November 4, 2007, the Defendant Bidault provides a report to the Plaintiff in respect to the services rendered by the Valderas Law Firm and certain matters referred to in a communication from the Defendant Zaida

Montalvo-Diaz, including the replacement of the entrance doors to the Property and the maintenance of the land surrounding the house on the Property.

23.      Notwithstanding the superfluous and unnecessary interventions of the Defendant Bidault, the Plaintiff continued to communicate directly with Maître Valderas regarding issues connected with its entitlements as a beneficiary of the Meyran Estates. By letter dated November 30, 2007, for example, the Plaintiff sent an estimate and description of the assets of the Meyran Estates in Puerto Rico to Maître Valderas.

24.      By letter addressed to the Defendant Bidault dated March 10, 2009, the law offices of Ernesto Valderas requests authorization,

> "to negotiate a settlement with the Secretary of the Treasury, in which we would be willing to accept the payment of the principal amount owed of $189,760.00 in consideration for the elimination of over $300,000.00 accumulated in interest and other charges. With the cash flow problems that the Government is facing and contemplating a case protracting its collection, a settlement that brings a collection of taxes at this time should be more than welcome by the Secretary of the Treasury."

25.      By letter on the letterhead of Francois-G. Bidault, the Defendant Bidault again interjects himself in respect to the services provided by the law firm of Mr. Valderas. Mr. Bidault in his letter dated April 2, 2009 provides a summary of the obstacles encountered by the Valderas law firm concerning the issue of succession duties payable by the Plaintiff. The Defendant Bidault also refers to the services of two other lawyers, Mr. Jimenez and Mr. Tesoriere, pertaining to the payment of capital gains tax in respect to the Property. The Defendant Bidault's letter of April 2, 2009 contains no reference whatsoever to the Defendant Mayer Associates LLP .

26.     The Plaintiff pleads that in the negotiations relating to the Meyran Estates tax claims of the Government of Puerto Rico, the Defendant Bidault did not provide any services in respect to the work performed by the Valderas law firm. His sole contribution involved communicating the request for instructions from Ernesto Valderas to the Plaintiff. The Plaintiff pleads that the exorbitant fees invoiced by the Defendant Bidault in respect to the estate tax issues were unjustified and without merit and should be repaid in full to the Plaintiff.

27.     The Plaintiff pleads that but for his functions as Honorary Consul of France in Puerto Rico, the Defendant Bidault would not have gained any knowledge regarding the Meyran Estates in Puerto Rico and the entitlements of the Plaintiff as beneficiary.

28.     The Plaintiff pleads that the Defendant Bidault wrongfully interfered with the interests and rights of the Plaintiff in respect to its entitlements under the Meyran Estates by consistently making recommendations and providing advice in respect to legal matters despite his lack of qualifications and experience in such matters.

29.     The Plaintiff pleads that the Defendant Bidault wrongfully misappropriated the Plaintiff's Meyran Estates Puerto Rico file and interfered with the interest and rights of the Plaintiff resulting in unnecessary costs, expenses and damages.

**B.     The initial involvement of the Defendant Zaida Montalvo-Diaz in the affairs of the Plaintiff**

30.     By a letter to the Plaintiff dated September 28, 2005, the Defendant Montalvo & Montalvo LLC presented a proposal regarding consulting services in connection with all the assets held in Puerto Rico as of the date of the death of Mr. and Mrs. Meyran. In this letter from the Defendant Montalvo & Montalvo LLC, it is specified that services will be

provided in respect to "the release and liquidation of the assets held in Puerto Rico of the hereditary estate of Mr. and Mrs. Meyran…"

31.     The Proposal dated September 28, 2005, received by the Plaintiff from the Defendant Montalvo & Montalvo LLC provides the following description of the services to be provided:

> "Phase One will consist of the liquidation of the estate on behalf of the named heirs, Association Diocesaine. According to the inheritance laws of succession, a person who has no heirs by force of law may dispose by will of all his property or part of it in favor of any person qualified to acquire it. Phase Two, will consist of the sale or disposition of the real estate property after the Secretary of the Treasury of Puerto Rico grants a final and total waiver of the legal tax lien imposed over the assets of the hereditary estate."

32.     The Proposal to the Plaintiff dated September 28, 2005, states that the Defendant Montalvo & Montalvo LLC has received instructions from the Defendant Bidault regarding tax issues as well as the insurance coverage for the Property.

33.     The Proposal of the Defendant Montalvo & Montalvo LLC dated September 28, 2005, also contains provisions relating to fees and billing procedures. This Proposal specifies that the fees "will be based on the amount of time incurred in working on the described services." It also contains the following statement: "we estimate that the above described services will take between 120 to 150 hours, at an hourly rate of $100 (USD)."

34.     The letter of September 28, 2005, of the Defendant Montalvo & Montalvo LLC also contains the following term: "we will submit progress invoices on a monthly basis according to the agreed upon fees and terms."

35.     By letter dated November 7, 2005, the proposal contained in the engagement letter of the Defendant Montalvo & Montalvo LLC dated September 28, 2005, is accepted and executed by Monseigneur Michel Golfier on behalf of the Plaintiff.

36.     During her meeting with Jacques Gauthier, the legal counsel of the Plaintiff, and Eliseo Roques, the Puerto Rico legal counsel of the Plaintiff, on December 19, 2014, the Defendant Zaida Montalvo-Diaz stated that she met the Defendant Bidault in a French bakery in San Juan. According to the Defendant Zaida Montalvo-Diaz, it was during this meeting that the Defendant Bidault asked her to accept responsibilities as a trustee and fiduciary of the Plaintiff in Puerto Rico in accordance with the terms of the 2006 Power of Attorney.

37.     During the meeting of December 19, 2014, the Defendant Zaida Montalvo-Diaz acknowledged that the she accepted the offer to serve as trustee and agent of the Plaintiff made by the Defendant Bidault despite the fact that she had no qualifications or experience in regard to the functions that she would assume. She admitted that she did not have any qualifications, training or experience in real estate or legal matters.

38.     The Plaintiff pleads that the Defendant Montalvo & Montalvo LLC breached the terms of the proposal dated September 28, 2005, by failing to provide the services described in the proposal and retaining other professionals to provide these services.

## C.    2006 Power of Attorney granted by the Plaintiff to Defendant Montalvo & Montalvo LLC

39.    On June 9, 2006, a special Power of Attorney (*Procuration*) was signed by Monseigneur Michel Golfier ("the 2006 Power of Attorney") on behalf of the Plaintiff which contained the following designation:

> Le Mandant nomme son Mandataire MONTALVO & MONTALVO, LLC., Numéro de Sécurité Sociale "66-0656982", Société par Actions de droit portoricain représentée à l'effet des présentes par son membre autorisé, ZAIDA MONTALVO-DIAZ, Numéro de Sécurité Sociale "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", majeur, célibataire, expert comptable et demeurant à San Juan (Puerto Rico), à l'effet d'agir en son nom et pour son compte en qualité de mandataire réel et légitime (ci-après parfois désigné le "Mandataire".)

In the English translation of the 2006 Power of Attorney, the designation clause is translated as follows:

> The Grantor designates as his Attorney-in-Fact, MONTALVO & MONTALVO, LLC., Social Security Number "66-0656982", a Limited Liability Company organized under the laws of the Commonwealth of Puerto Rico, represented in this act by its authorize[d] member, ZAIDA MONTALVO-DIAZ, Social Security Number "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", of legal Rico [Puerto Rico], to act in his name place and stead, as his true and lawful attorney…

40.    The 2006 Power of Attorney authorizes the Attorney-in-Fact to execute documentation and conduct all the affairs of the Plaintiff relating to the properties of the Meyran Estates in Puerto Rico inherited by the Plaintiff. Under the 2006 Power of Attorney, these properties include:

> all the existing funds available in the checking and savings account of Citibank, N.A., Condado Branch, numbered "123-018293" and of all existing and unclaimed funds of Smith Barney (today under the custody of the Office of Financial Institutions Commissioner), numbered "07-54433019", and/or any other property under the name of Mr. Pierre Meyran or Mrs. Andree Meyran.---

41.     The 2006 Power of Attorney also authorizes the Attorney-in-Fact to sell the properties of the Plaintiff in Puerto Rico. The 2006 Power of Attorney contains the following terms and provisions relating to the duties and obligations of the Attorney-in-Fact.

> Le Mandataire ne sera responsable d'aucune perte résultant de toute erreur de jugement faite de bonne foi. Cependant, le Mandataire sera responsable de toute faute dolosive ou défaut d'agir de bonne foi pendant qu'il agira sous l'autorité du présent Pouvoir.

The English translation of this clause contains the following provisions:

> The Attorney-in-Fact shall not be liable for any loss that results from a judgment error that was made in good faith. However, the Attorney-in-Fact shall be liable for willful misconduct or the failure to act in good faith while acting under the authority of this Power of Attorney.

The powers and rights of the attorney under the 2006 Power of Attorney include the following powers:

> Les pouvoirs du Mandataire incluront, notamment, le pouvoir, relativement aux biens décrits ci-dessus, de…Vendre, transférer, échanger, céder, hypothéquer, acheter, investir, ou réinvestir tous avoirs, droits ou biens, meubles ou immeubles, détendus, à ce jour ou à l'avenir par le Mandant…Employer toute assistance professionnelle et commerciale qui pourra être appropriée, y compris tous avocats, comptables et agents immobiliers et leur payer une rémunération raisonnable pour leurs services….

These provisions of the 2006 Power of Attorney were translated into English as follows:

> "The Attorney-in Fact's powers shall include, but not be limited to, the power in connection with the properties described above to…Sell, transfer, exchange, assign, mortgage, buy, invest, or reinvest any assets, rights or properties, whether real or personal, owned by the Grantor, now or in the future…Employ professional and business assistance as may be appropriate, including attorneys, accountants, and real estate agents, and pay them reasonable compensation for their services…"

42.     The Plaintiff pleads that the 2006 Power of Attorney specifically provides for the employment of professional real estate agents in respect to the sale of the real property of the Plaintiff and that the Defendants Zaida Montalvo-Diaz, Aurora Montalvo-Diaz and Montalvo & Montalvo LLC breached their contractual obligations and fiduciary duties by failing to retain professional real estate agents regarding the sale of the Property.

43.     The Plaintiff pleads that the actions and conduct of the Defendants Zaida Montalvo-Diaz, Aurora Montalvo-Diaz and Montalvo & Montalvo LLC relating to the administration of the Meyran Estates from 2005 to 2014 constitute willful misconduct and have violated the obligations to act in good faith under the terms of the 2006 Power of Attorney.

**D.     July 2006 Appraisal of José C. Méndez**

44.     An Appraisal Report relating to the Property was prepared for the Plaintiff and signed by José C. Méndez on July 9, 2006 ("2006 Méndez Appraisal"). In this Appraisal Report, the fair market value of the Property based on the Sales Comparison Approach as of May 9, 2006 is $1,300,000. The estimate of the market value of the Property in the 2006 Méndez Appraisal based on the cost approach is $1,200,000.

45.     The 2006 Méndez Appraisal contains the following observations in respect to the marketability of properties in the neighborhood of the Property:

> The subject property is located in an urban development of Santurce in the San Juan Municipality. Development caters to the middle high to high income market. There were no apparent adverse factors which affect the subject's marketability. It is an established neighborhood of well maintained properties which demonstrates a good market for this area. It has adequate access to all necessary supporting facilities like shopping, recreation and employment centers. The subject has a special attractive is located front beach.

46.     The 2006 Méndez Appraisal contains the following observations in respect to the condition of the improvements of the Property: "the house is in average to fair condition, need a renovation & many repairs, is vacant approximately (11) years. No external inadequacies were observed. The appraiser observed nothing in this neighborhood that might effect or reduce the value of this Property."

47.     The 2006 Méndez Appraisal provides the following explanation in respect to the estimated value of the Property based on sales comparison: "the listed sales are the most recent deed, arm's length transaction of competitive units from the subjects immediate area."

48.     The 2006 Méndez Appraisal supports its Sales Comparison Approach by relying on four comparable sales. The first comparable sale is located at 2205 General Del Valle St., Park Boulevard, San Juan and it was sold for $1,500,000. It is located 0.05 miles from the Property. The second comparable sale is located at 32 Emajagua St., Punta Las Marias, San Juan and its sales price was $1,325,000. This property is located 0.41 miles from the Property. The third comparable sale is located at 22 Almendro St., Punta Las Marias, San Juan and its sales price was $1,350,000. It is situated 0.23 miles from the Property. The fourth comparable sale is located at 2 Inga St., Punta Las Marias, San Juan and it sold for $1,230,000. This property is located 0.48 miles from the Property.

49.     The Plaintiff received an invoice dated July 9, 2006 in respect to the 2006 Méndez Appraisal. This invoice, which was in the amount of $500, was paid by the Plaintiff.

50.     The Plaintiff pleads that the 2006 Méndez Appraisal unequivocally supports the Plaintiff's claim relating to the high market value of the Property in May 2006 and the

fact that it is located in a superior and exclusive neighborhood of San Juan. It also establishes

that the value of the Property based on the Cost Approach is $1,200,000.

**E.   Meeting between the Defendant Zaida Montalvo-Diaz and representatives of the Plaintiff – September 2006**

51.   In September of 2006, Monseigneur Michel Golfier, Mr. Antoine de Vial,

Mr. Claude Myon, representatives of the Plaintiff, met the Defendant Zaida Montalvo-Diaz

in San Juan, Puerto Rico. By letter dated September 9, 2006 on the letterhead of the

Defendant Montalvo & Montalvo LLC, which mentions this meeting, the Defendant Zaida

Montalvo-Diaz referring to "the eventual sale and liquidation of all the assets" of the Meyran

Estates for the benefit of the Plaintiff, makes the following statement: "*thank you for your*

*trust on such [an] important assignment.*"   This letter also refers to the payment of certain

invoices including the invoice of José Méndez in respect to the 2006 Méndez Appraisal.

52.   The letter of September 9, 2006, from the Defendant Montalvo & Montalvo

LLC to the Plaintiff refers to various invoices relating to "cleaning work" performed on the

Property which was deemed necessary, including:

1. SUPER LOCK & KEY – for the services of opening the house
   and replacing some locks – Total $300.00 USD.
2. BIG DEAL EXTERMINATING, INC. – for the termite
   extermination services – Total cost $875 USD. (This job is
   scheduled for September 12, 2006)
3. SRC REAL PROPERTIES, INC. – for the cleaning of the patio,
   the garage and the inside part of the house, including the
   removal and disposition of materials. Initial Bill, Total $4,750.

**F.   Contract with Colonial Insurance Agency relating to Plaintiff's Property**

53.   An insurance contract was made with Colonial Insurance Agency in October

2007 and premium payments in respect to this insurance were made from the account of the

Plaintiff at Banco Popular. For instance, a payment by check in the amount of $1,014 was made August 9, 2011 from the account of the Plaintiff at Banco Popular. The policy with Colonial Insurance provides that the insurance coverage pertains only to the house on the Property which are valued at $412,500.

**G.      Estate taxes payable in respect to the Meyran Estates**

54.      By a certificate of release of Estate Tax Lien dated November 22, 2010 addressed to Aurora Montalvo-Diaz, the internal revenue department of Puerto Rico released the Property regarding any Estate Tax Lien under the Puerto Rico Internal Revenue Code of 1994, as amended. This Certificate of November 22, 2010 declares that the Property is "exempt". As a result, no estate tax was paid in respect to the Properties which include: (a) The Property valued at $500,000 as of the date of the death of Pierre Meyran (August 30, 1995); (b) $161,648,14 in the account of Smith Barney Citygroup Cuenta; and,   (c) $235,154.94 in the account of Citybank Cuenta. The value of the gross estate according to the Certificate dated November 22, 2010 is $896,803.08.

**H.      Payment to Departamento de Hacienda – December 30, 2010**

55.      According to a statement reviewed by the Plaintiff which is dated December 30, 2010, the total payment due to the Departamento de Hacienda is the amount of $177,615.42.

**I.      Fees payable to the Law Offices of Correa Marquez & Valderas**

56.      By an email dated February 9, 2011 addressed to the Defendant Bidault, the Plaintiff approved the payment of the fees invoiced by the law firm of Ernesto Valderas and states that the payment should be made from the Plaintiff's bank account in Puerto Rico.

57.     By an invoice dated January 25, 2011, received from the law offices of Correa Marquez & Valderas, the Plaintiff received a statement of legal fees payable in the amount of US $106,322.00. The legal fees payable pursuant to this invoice, which is signed by Ernesto Valderas, are based on the calculation of "30% of any reduction obtained in the total amount claim[ed] by [the] Puerto Rico treasury department." The total amount claimed in respect for the estate tax in respect to the Estate of Mrs. Meyran was $265,661.00. The estate tax in respect to this Estate was reduced to $0.00. The total estate tax claimed in respect to the Estate of Pierre Meyran was $265,661.00.  The estate tax payable in regard to this Estate was reduced by $88,748. The calculation of the fees payable to the law offices of Correa Marquez & Valderas was based on the terms of the letter dated February 26, 2007 sent by that law firm to the Plaintiff.

58.     By letter dated February 18, 2011 from Dominique Elgoyhen, on behalf of the Plaintiff, addressed to the Defendant Zaida Montalvo-Diaz, various instructions are given in respect to the assets of the Plaintiff in Puerto Rico including:

> -Authorize the payment from said account of $176,913,00 plus any interest from December 1, 2010 to the day of the payment to "SECRETARIO DE HACIENDA".
> -Authorize the payment from the said account of $106,322.00 to the law firm CORREA MARQUES & VALDERAS.
> -Authorize the payment from said account of $3,675.00 to MONTALVO – MONATALVO.
> -Authorize the payment from said account of $2,800.65 plus any interest from Dec 9, 2010 to CRIM.
> -Authorize the payment from said account of $1,219.05 plus any interest since Feb 12, 2010 to "SECRETARIO DE HACIENDA.

**J.        Succession duties payable to Departamento de Hacienda**

59.        By letter dated March 10, 2011, the Department de Hacienda authorized the payment of an amount of $178,735.43 from the account of the Meyran Estate.

**K.        Invoices of Attorney Valderas and Attorney Correa in 2010-2011**

60.        In an email dated January 22, 2015, the Defendant Zaida Montalvo-Diaz states that in 2011 an invoice in the amount of $106,322.00 was sent by the law firm Correa Marquez & Valderas to the Plaintiff. The Defendant Zaida Montalvo-Diaz also stated in this email that she did not have a copy of the 2011 invoice of this law firm.

61.        In the email dated January 22, 2015 sent by the Defendant Zaida Montalvo-Diaz to the legal counsel of the Plaintiff, she acknowledged that a payment of $62,915.08 was made from the Plaintiff's bank account to Luis Correa Marquez and Ernesto Valderas on November 3, 2011. The balance of the law firm's invoice was paid directly by the Plaintiff.

**L.        Invoice from Defendants Mayer Associates LLP  and Bidault dated August 2, 2011, relating to Real Estate Commission**

62.        An invoice dated August 2, 2011 addressed to the Plaintiff was sent by Mayer Associates LLP in respect to the professional services rendered by the Defendant Bidault concerning the search for a purchaser for the Property and the sale of the Property. This invoice stipulates that it will be due upon the payment of the purchase price by the purchaser of the Property. The invoice provides that the amount payable shall be 5% of the purchase price paid by the purchaser of the Property.

63.        The Plaintiff pleads that the invoice dated August 2, 2011, is without justification or merit. The Plaintiff further pleads that the Defendant Bidault wrongfully

instructed the Defendants Zaida Montalvo-Diaz, Aurora Montalvo-Diaz and Montalvo & Montalvo LLC to market the Property for sale without the support and involvement of professional real estate agents because the Defendant Bidault, acting in his own interest, attempted to impose an obligation on the Plaintiff to pay the real estate commission to himself. The Plaintiff pleads that the Defendants Bidault and Mayer Associates LLP  were not qualified or entitled to receive any commission on the sale of the Property particularly since the Defendant Bidault had not been a resident of Puerto Rico for many years.

**M.      Banco Popular account of the Plaintiff in 2011**

64.      On July 1, 2011, an amount of $211,322.08 was deposited in the account of the Plaintiff at Banco Popular. This amount represented the funds released by Banco Gubernamental Fomento of the Departamento de Hacienda of the Government of Puerto Rico. On July 1, 2011, a payment of $21,703.46 was made by check from the Banco Popular account of the Plaintiff to Ernesto Valderas. On July 1, 2011 a payment of $21,711.46 was made to the Defendant Zaida Montalvo-Diaz by check from the Banco Popular account of the Plaintiff.  The Defendant Zaida Montalvo-Diaz claims that on July 1, 2011 an amount of $21,711.46 was paid by check to Luis M. Correa-Marquez. This payment was made through a bank check. On July 12, 2011, an amount of $157,907.16 was transferred by international wire to the Plaintiff from its Banco Popular account.

65.      As of July 13, 2011, the balance in the Banco Popular account of the Plaintiff was $10,000.

**N.      December 5, 2011 Appraisal by José C. Méndez**

66.      An appraisal report was prepared by José C. Méndez and signed on December 5, 2011 ("2011 Méndez Appraisal"). In the 2011 Méndez Appraisal, the market value attributed to the Property is $600,000 based on the Sales Comparison Approach as of December 5, 2011. The value of the Property based on the replacement Cost Approach is $605,000.

67.      The appraised value of $600,000 in the 2011 Méndez Appraisal based on the Sales Comparison Approach was supported by four listed sales of properties which were considered most similar to the Property. The first comparable sale was for a property located at 1 Rampla del Almirante St, Park Boulevard Dev., San Juan which was sold for a sales price of $825,000. This property was located 0.30 miles from the Property. The second comparable sale related to a property located at 2008 Espana St, Ocean Park Dev., San Juan which sold for a purchase price of $625,000. This property was located 0.51 miles from the Property.  The third comparable sale related to a property located at Lot 3 (17) Pacific Place St, Ocean Park Dev, San Juan which was sold for $700,000. This property was located 0.82 miles from the Property. The fourth comparable sale pertained to a property at 2220 Park Boulevard St, Park Boulevard, Dev., San Juan which sold for $515,000. This property was located 0.14 miles from the Property.

68.      The 2011 Méndez Appraisal certifies that the market value, which is based on the Sales Comparison Approach, is $600,000. It also states that if a sale "will occur within a severely limited future marketing period" and the "seller" is under "extreme compulsion to

sell" then the "liquidation value" of the Property would be $500,000 ($ 600,000 less 15% discount = to $510,000 rounded to $500,000).

69.     The Plaintiff received an invoice for the 2011 Méndez Appraisal for an amount of $400.   The invoice is dated December 8, 2011. This invoice was paid by the Plaintiff on December 23, 2011.

**O.     Transfer of title in the Property to the Plaintiff**

70.     On May 2, 2012, by the Order of the Estado Libre Asociado de Puerto Rico Tribunal de Primera Instancia, the rights and interest of the Plaintiff as the beneficiary of the real estate Property of the Meyran Estates in Puerto Rico were recognized.   As a result, the Court recognized the Plaintiff as the "legal legatee" of the real estate property.

71.     The legal services required to obtain the Order of the Estado Libre Asociado de Puerto Rico Tribunal de Primera Instancia were rendered by the law offices of Correa Marquez & Valderas in San Juan. An invoice for legal fees dated May 7, 2012 in the amount of $10,000 was presented to the Plaintiff. This invoice, which covers services rendered from August 9, 2011 to April 23, 2012, provides some information regarding the work of Attorney Correa and Attorney Valderas. The said invoice dated May 7, 2012, makes reference to one meeting with the Defendant Zaida Montalvo-Diaz and makes no reference to any consultations or meetings with the Defendant Bidault. According to the May 7, 2012 invoice, a total of 55.75 hours were devoted to the services covered by the invoice.

**P.      Appraisal by Carlos F. Cernuda-Rodríguez 2013**

72.      In an email from Jerome Froc an employee of the Plaintiff dated May 27, 2013 to Cernuda Rodríguez, Mr. Rodríguez is asked if he is willing to conduct an appraisal on the Property. The 2006 Méndez Appraisal is sent with this email. The Plaintiff's email dated May 27, 2013 addressed to Mr. Cernuda Rodríguez states that "you can contact our correspondent in Puerto Rico Mr. Francois Bidault to whom I give your email address phone number."

73.      An appraisal report in respect to the real estate Property of the Plaintiff located at 2164 Park Boulevard, Santurce Ward, San Juan, PR 00911, was completed on August 7, 2013 ("the 2013 Cernuda Rodríguez Appraisal"). This report specifies that the purpose of the appraisal is "to indicate market value." It also states that the "function of the appraisal" is "for marketing purpose/use." The appraisal also specifies that the gross building area of the property is 2843 square feet and that the site area is 587.21 square meters.

74.      The 2013 Cernuda Rodríguez Appraisal provides the following opinion in respect to the Property: "After consideration of the physical, functional, and economic factors of the subject Property it is my opinion that is Market Value, in Fee Simple Estate, and as of the Effective Date of Appraisal is in the order of THREE HUNDRED THOUSAND DOLLARS [$300,000] of which $176,000, equivalent to $300.00 per square meter, is allocated to the value of the subject site."

75.      In the Summary of Salient Facts and Conclusion of the 2013 Cernuda Rodríguez Appraisal, it is stated in respect to "value indications," that the value of the Property was determined to be $333,000 on the basis of the cost/summation analysis. It is

stipulated in the report that this value comprises a "depreciated improvements value" of $157,000 and a land value of $176,000. The report then states that the "final indication of value in fee simple" is $300,000 which is equivalent to $105.52 per square foot. The report also states that the land value per square meter is $103. The report then specifies that the effective date of the appraisal is June 29, 2013.

76.     The 2013 Cernuda Rodríguez Appraisal, in description of the scope of the appraisal, states that "attempts were made to confirm the comparable sales" and that "the sales comparison analysis was developed by searching, grouping and analyzing sales of properties deemed similar to the subject one in terms of location, zoning and use…"

77.     The 2013 Cernuda Rodríguez Appraisal contains the following comments regarding value trends in the neighborhood of Santurce Ward, Park Boulevard Sector, San Juan:

> As with the rest of the island, particularly the San Juan Metropolitan Area, the neighborhood, Park Boulevard/Santa Teresita, has had a marked devaluation of property values, in many instances anywhere between 40% to 60%. This is due to the general economic and real property recession which has been present in PUERTO RICO for the last five years, the high unemployment rate, and the contraction of the mortgage banking institutions. The forecasts are that this situation is to last at least three to five years into the future.

78.     The 2013 Cernuda Rodríguez Appraisal dated August 7, 2013, prepared by Mr. Cernuda Rodríguez states that the "highest and best use" of the Property is "for residential use/purpose". The report then provides the following description of the area in which the appraised Property is located:

> The subject property is located within a Residential/ Tourist Zoning District, along Park Boulevard, which is a residential/tourist strip, with

> physical characteristics, such as being at street level, adequately exposed to vehicular and pedestrian traffic, among others, sufficient to sustain a residential use. The subject site is well served with municipal utilities and services such as electricity water and sewer, gas, telephone, garbage collection, police and fire protection, hospitals, schools, parks and recreation facilities and employment centers.

79.     In the 2013 Cernuda Rodríguez Appraisal, the dimensions of the Property are described as containing "a land area of approximately 587.21 square meters." The report also states that the appraised Property is "generally rectangular in shape."  The Report then provides this information in respect to the street improvements on Park Boulevard:

> The subject site fronts on Park Boulevard, which is a residential route. There are concrete sidewalks, as well as concrete curbs, on both sides of the street. The street is paved with macadam and has electric posts along with incandescent lighting as well as drainage facilities.

80.     With respect to zoning and restrictions, the 2013 Cernuda Rodríguez Appraisal states that "the subject property is within a residential tourist zoning district" and that "there are no apparent private restrictions or easements on the subject site other than normal utility easements." The Report also states that "there are no apparent offensive noises, odors, views, or other kinds of influences, which would adversely affect the marketability of the subject property."

81.     In its conclusion, the 2013 Cernuda Rodríguez Appraisal contains the following very positive remarks in respect to the Property:

> The subject site is a highly desirable one due to the above analysis. It has good size, shape, topography, and soil conditions. All public utilities and amenities also service it. The actual zoning greatly enhances the value of the site and its marketability because it confirms greatly to a neighborhood.

82.     The 2013 Cernuda Rodríguez Appraisal supports its valuation of the Property by comparing it to three "improved property sales". The first improved property was sold May 30, 2012 for $370,000 and it is located at 2210 General del Valle Street, Park Boulevard, San Juan PR 00911. The second improved property was sold on June 14, 2012 for $250,000 and it is located at 720 Hernández Street, Miramar, San Juan PR 00907. The third improved property was sold March 5, 2012 for a purchase price of $387,000 and it is located at 709 Concordia Street, Miramar, San Juan, PR 00907.

83.     In the provisions contained in the 2013, Cernuda Rodríguez Appraisal under the title Contingent and Limiting Conditions, it is stated that "the information contained in this report has been gathered from sources deemed to be reliable. *I take no responsibility for its accuracy.*"

84.     By an invoice dated August 7, 2013, addressed to the Plaintiff and the Defendant Bidault, Mr. Cernuda Rodríguez requested a payment of $650 for the professional services rendered in connection with the 2013 Cernuda Rodríguez Appraisal. This invoice was paid by the Plaintiff. The Plaintiff pleads that the 2013 Cernuda Rodríguez Appraisal was negligently deficient because its analysis of sales of improved properties was not similar to the subject Property as to their location and value.

85.    In an email dated August 11, 2013, addressed to the Plaintiff, the Defendant Bidault referring to his discussions with the Appraiser Cernuda Rodríguez states that the Appraiser has confirmed that the foundations of the house are very strong and that the Appraiser has confirmed that it will cost $200,000 USD to renovate the house. In his email of

August 11, 2013, the Defendant Bidault repeatedly praises the Appraiser Cernuda Rodríguez. In his words, "*c'est une personne d'environ 60 ans qui a beaucoup d'experience…C'est un appraiser de haut niveau*!"  In the same email, the Defendant Bidault states that a neighbor, Manuel Bernarl, is systematically keeping an eye on the Property. In August 2013, the Defendant Bidault has been residing in the United States for several years and was not in San Juan at all material times in respect to the sale of the Property.

86.     The Plaintiff pleads that at the time the Appraisal is conducted by Carlos F. Cernuda Rodríguez in 2013, the Plaintiff is continuing to rely on the representations of the Defendant Bidault that he resides in Puerto Rico and that he is providing his services from the city of San Juan. In fact, the Defendant Bidault relocated to the New York area in the United States several years earlier.

87.     The Plaintiff pleads that the 2013 Cernuda Rodríguez Appraisal was negligently deficient because *inter alia* failed to take into consideration the 2006 Mendez Appraisal which appraised the Property at $1,300,000. The 2013 Cernuda Rodríguez Appraisal is less than 25% of the appraised value of the Property in 2006.

88.     The Plaintiff pleads that the Defendant Bidault deliberately misrepresented the cost of the renovations required in respect to the house located on the Property. Instead of the $200,000 mentioned in his email dated August 11, 2013, the cost of the required renovations described in the 2014 Ferrer Appraisal was only $33,400.

89.     The Plaintiff pleads that the Defendants Zaida Montalvo-Diaz, Aurora Montalvo-Diaz and Montalvo & Montalvo LLC's reliance on the 2013 Cernuda Rodríguez

Appraisal, which was negligently deficient, represented a breach of her duties under the Power of Attorney and negligence with respect to the performance of her functions.

90.     The Plaintiff pleads that the Defendant Bidault's reliance on the 2013 Cernuda Rodríguez Appraisal, which was negligently deficient, represented a breach of his duties as a business advisor to the Plaintiff and negligence with respect to the performance of his functions.

91.     The Plaintiff pleads that the evaluation of the Property in the 2013 Cernuda Rodríguez Appraisal in the amount of $333,000 is based on a wrongful   analysis and it is erroneous. The Plaintiff relies on the Value by Cost Approach and Analysis contained in the 2006 Méndez Appraisal which estimated the cost of the Property at $1,200,000. The Plaintiff also relies on the value of $605,000 for the Property based on the Cost Approach which is set out in the 2011 Méndez Appraisal.

**Q. Wrongful Acts of the Defendant Mayer Associates LLP**

92.     The Plaintiff pleads that the Defendant Mayer Associates LLP wrongfully misappropriated the Plaintiff's Meyran Estates Puerto Rico file and interfered with the interest and rights of the Plaintiff resulting in unnecessary costs, expenses and damages.

**R. Invoices to the Plaintiff from the Defendants Mayer Associates LLP  and the Defendant Bidault**

93.     From 2009-2014, the following invoices were received by the Plaintiff from the Defendants Mayer Associates and the Defendant Bidault.

| **Date** | **Amount** | **Balance** |

| | | |
|---|---|---|
| 2005 | $ 12,000.00 | $  12,000.00 |
| 2006 | $ 12,000.00 | $  24,000.00 |
| 2007 | $ 12,000.00 | $  36,000.00 |
| 2008 | $ 14,000.00 | $  50,000.00 |
| 2009 | $ 14,000.00 | $  64,000.00 |
| 2010 | $ 42,500.00 | $106,500.00 |
| 2011 | $ 22,500.00 | $129,000.00 |
| August 2, 2011 | $ 15,000.00 | $144,000.00 |
| January 2012 | $  1,500.00 | $145,500.00 |
| April 2012 | $  1,500.00 | $147,000.00 |
| May 2012 | $  1,500.00 | $148,500.00 |
| June 2012 | $  1,500.00 | $150,000.00 |
| July 2012 | $  1,500.00 | $151,500.00 |
| August 2012 | $  1,500.00 | $153,000.00 |
| September 2012 | $  1,500.00 | $154,500.00 |
| October 2012 | $  1,500.00 | $156,000.00 |
| November 2012 | $  1,500.00 | $157,500.00 |
| December 2012 | $  1,500.00 | $159,000.00 |
| January 2013 | $  1,500.00 | $160,500.00 |
| February 2013 | $  1,500.00 | $162,000.00 |
| March 2013 | $  1,500.00 | $163,500.00 |
| April 2013 | $  1,500.00 | $165,000.00 |
| May 2013 | $  1,500.00 | $166,500.00 |
| June 2013 | $  1,500.00 | $168,000.00 |
| July 2013 | $  1,500.00 | $169,500.00 |
| August 2013 | $  1,500.00 | $171,000.00 |
| September 2013 | $  1,500.00 | $172,500.00 |
| December 2013 | $  1,500.00 | $174,000.00 |
| January 2014 | $  1,500.00 | $175,500.00 |
| February 2014 | $  1,500.00 | $177,000.00 |
| March 2014 | $  1,500.00 | $178,500.00 |
| April 2014 | $  1,500.00 | $180,000.00 |
| May 2014 | $  1,500.00 | $181,500.00 |
| June 2014 | $  1,500.00 | $183,000.00 |
| July 2014 | $  1,500.00 | $184,500.00 |
| August 2014 | $  1,500.00 | $186,500.00 |
| September 2014 | $  1,500.00 | $187,500.00 |
| October 2014 | $  1,500.00 | $189,000.00 |
| **Total:** | | **$189,000.00** |

**S.  Invoices of the Defendants Mayer Associates LLP  and Bidault**

*Complaint*
Page -30-

94.     The following amounts were paid by the Plaintiff to Defendants Mayer

Associates LLP  and Francois Bidault from 2009 to 2014:

| Date | Amount | Balance |
|------|--------|---------|
| October 7, 2009 | € 12,837.89 | €  12,837.89 |
| September 30, 2009 | € 12,458.47 | €  25,296.36 |
| January 13, 2011 | € 21,451.01 | €  46,747.37 |
| May 19,2011 | € 14,986.95 | €  61,734.32 |
| July 26, 2011 | € 14,765.15 | €  76,499.47 |
| September 5, 2011 | € 16,050.79 | €  92,550.26 |
| November 16, 2011 | €  4,475.94 | €  97,026.20 |
| December 8, 2011 | €  4,525.23 | € 101,551.43 |
| February 21, 2012 | €  2,279.98 | € 103,831.41 |
| April 26, 2012 | €  2,285.71 | € 106,117.12 |
| June 18, 2012 | €  2,390.82 | € 108,507.94 |
| August 1, 2012 | €  2,480.57 | € 110,988.51 |
| November 4, 2012 | €  2,364.07 | € 113,352.58 |
| December 17, 2012 | €  2,299.56 | € 115,652.14 |
| March 25, 2013 | €  2,348.34 | € 118,000.48 |
| April 8, 2013 | €  2,321.08 | € 120,321.56 |
| June 7, 2013 | €  2,293.58 | € 122,615.14 |
| August 28, 2013 | €  2,285.19 | € 124,900.33 |
| September 16, 2013 | €    765.86 | € 125,666.19 |
| October 25, 2013 | €  2,193.46 | € 127,859.65 |
| December 13, 2013 | €  2,200.54 | € 130,060.19 |
| February 19, 2014 | €  2,202.16 | € 132,262.35 |
| April 25, 2014 | €  2,186.43 | € 134,448.78 |
| August 18, 2014 | €  2,264.49 | € 136,713.27 |
| **Total:** | | **€ 136,713.27** |

95.     The Plaintiff pleads that the invoices received by the Plaintiff from the

Defendant Bidault and Defendants Mayer Associates LLP are grossly excessive, egregious

and unmerited. Taking into consideration the wrongful conduct of the Defendant Bidault

since 2001, these amounts should be repaid in full to the Plaintiff.

**T.     Amounts invoiced by the Defendant Montalvo & Montalvo LLC**

96.     The following amounts were invoiced by the Defendant Montalvo & Montalvo

LLC between 2005 and 2014:

| Date | Amount | |
|---|---|---|
| November 7, 2005 | € 4,291.85 | |
| January 1, 2006 | € 2,808.71 | |
| August 30, 2006 | € 6,733.42 | ($7,312.50) |
| September 27, 2006 | € 10,488.47 | |
| October 23, 2006 | € 1,695.60 | |
| April 16, 2008 | € 852.22 | |
| January 19, 2011 | € 3,383.98 | ($3,675.00) |
| June 1, 2011 | € 349.14 | |
| October 31, 2014 | € 10,143.50 | ($10,956.00) |
| **Total:** | **€ 40,746.89** | **($44,010.73 USD)** |

**U.     Amounts paid to the Defendant Montalvo & Montalvo LLC**

97.     The following invoices were paid from the Plaintiff to the Defendant

Montalvo & Montalvo LLC between 2005 and 2014:

| Date | Amount | |
|---|---|---|
| November 7, 2005 | € 4,291.85 | |
| January 1, 2006 | € 2,808.71 | |
| August 30, 2006 | € 6,733.42 | ($7,312.50) |
| September 27, 2006 | € 10,488.47 | |
| October 23, 2006 | € 1,695.60 | |
| April 16, 2008 | € 852.22 | |
| January 19, 2011 | € 3,383.98 | ($3,675.00) |
| June 1, 2011 | € 349.14 | |
| **Total:** | **€ 30,603.39** | **($ 33,131.23 USD)** |

98.     The Plaintiff pleads that the invoices received by the Plaintiff from the Defendants Zaida Montalvo-Diaz and Montalvo & Montalvo LLC are grossly excessive, egregious and unmerited. Taking into consideration the wrongful conduct of Zaida Montalvo-Diaz since 2006, these amounts should be repaid in full to the Plaintiff.

**V.     Total amount of professional fees invoiced and/or paid from 2001 to 2014**

99.     The following professional fees were invoiced and/or paid in respect to the assets inherited by the Plaintiff between 2001 and 2014:

| Professional Services | Date | Amount |
|---|---|---|
| | | $    3,975.00 |
| Lopez | 2001 | $       500.00 |
| Méndez Appraisal | 2006 | $ 106,322.00 |
| Correa Marquez & Valderas | 2011 | $   10,000.00 |
| Correa Marquez & Valderas | 2012 | $       650.00 |
| Cernuda Rodriguez Appraisal | 2013 | $ 189,000.00 |
| Total amount invoiced by the Defendants Bidault and Mayer Associates LLP | 2009 to 2014 | $   44,010.73 |
| Total Amount invoiced by Montalvo & Montalvo LLC | 2005-2014 | |

**Total:**                                                  **$ 354,457.73**

**W.  Estate and Realty Taxes and other amounts paid from 2001 to 2014**

100.     The following amounts were invoiced and/or paid in respect to the estate and realty taxes inherited by the Plaintiff between 2001 and 2014:

| Services | Date | Amount |
|---|---|---|
| CRIM | 2001 | $   8,833.03 |
| P.R.P.F.C | 2001 | $   5,893.83 |
| SUPER LOCK & KEY | 2006 | $       300.00 |
| BIG DEAL EXTERMINATING, | 2006 | $       875.00 |

| INC | | |
|---|---|---|
| SRC REAL PROPERTIES INC. | 2006 | $     4,750.00 |
| Departamento de Hacienda | 2010 | $ 178,735.43 |
| Colonial Insurance Agency | 2011 | $     1,014.00 |
| CRIM – Realty Taxes | 2011 | $     2,800.65 |
| SECRETARIO DE HACIENDA | 2011 | $     1,219.05 |
| Departamento de Hacienda | 2014 | $   42,854.92 |
| **Total:** | | **$ 247,275.91** |

101.    The Plaintiff pleads that the fact that the professional fees, taxes and other amounts equal to **$601,733.64 USD** in respect to the Meyran Estate assets inherited by the Plaintiff, with a total value of **$696,803.08**, is excessive, without merit and wrongful.

**X.    Approval of Purchase Agreement by the Plaintiff**

102.    In a letter dated March 24, 2014, Philippe de Cuverville, on behalf of the Plaintiff approved the sale of the Property to Dr. Juan Montes-Ruiz in accordance with the terms of the Purchase Agreement.

103.    The Plaintiff pleads that the authorization given to the Defendant Zaida Montalvo-Diaz was based on misrepresentations relating to the circumstances of the sale transaction, as well as the true market value of the Property.

**Y.    Agreement to Purchase the Property**

104.    On May 28, 2014, an Agreement of Purchase and Sale relating to the Property was executed by Dr. Juan Montes-Ruiz as Purchaser and by Zaida Montalvo-Diaz on behalf of the Plaintiff ("the Purchase Agreement"). The purchase price in the Purchase Agreement was an amount of $300,000. A deposit of $15,000 payable to the Plaintiff was paid by a check dated May 28, 2014, which was only

deposited in the Banco Popular account of the Plaintiff on June 7, 2014. The Purchase

Agreement stipulates that the purchase will be completed August 28, 2014, being 120

days after the execution of the Purchase Agreement.

105.    In an email dated June 20, 2014, addressed to the Plaintiff, the

Defendant Bidault attempts to make several statements in order to convince the

Plaintiff to proceed with the sale of the house pursuant to the terms of the Purchase

Agreement. The Defendant Bidault underlines in this email that the real estate market

in Puerto Rico is very bad and that the situation in Puerto Rico has not been good for

several years. He also states that it is difficult to obtain a mortgage loan in Puerto

Rico. The Defendant Bidault then stresses that the Plaintiff must rely on the 2013

Cernuda Rodríguez Appraisal. He then misrepresents the market value set out in the

2006 Méndez Appraisal by referring to an amount of $1,200,000 instead of the

appraised value of $1,300,000. The defendant Bidault then misrepresents the market

value certified in the 2011 Méndez Appraisal by referring to a value of $500,000

instead of $600,000.

106.    An invoice dated August 22, 2014, addressed to the Plaintiff was sent

to the law office of José H. Martinez Camacho. This invoice was in the amount of

$4859 and it pertained to the legal services rendered in regard to the purchase of the

Property.

**Z.      The Arrears of Real Estate Taxes Payable by the Plaintiff (CRIM)**

107.    Francesco Feliciano, a chartered accountant, has been retained to deal with the issue of the liability of the Plaintiff to pay an excess of $35,000 in connection with real estate taxes based on the fact that the Plaintiff is a foreign enterprise.

108.    In an email dated April 6, 2014, the Defendant Bidault provides a list of the local professionals ("professionnels locaux") who have been looking after the affairs of the Plaintiff in Puerto Rico. In this list of local professionals, the Defendant Bidault includes himself although he has not resided in Puerto Rico for many years. In his words, referring to his status as a local professional, the Defendant Bidault states: "Francois Bidault qui a "chapote" depuis le debut le cas Meyran; rapportant au debut a Monseigneur Golfier et Mme Elgoyhen puis Mr Froc et après Mr Rousselot."

109.    In the Defendant Bidault's email of April 6, 2014, the Defendant Bidault claims that he helped Attorneys Valderas and Correa Marquez to convince the government to reduce succession duties from $550,000 to $175,000.

110.    The Plaintiff pleads that the Defendant Bidault intentionally misrepresented his status as a "local professional" to the Plaintiff in order to justify his exorbitant invoices relating to services which over a period of many years were in fact provided by Attorney Correa Marquez, Attorney Valderas and by Attorney Martinez. Other services were provided by the accountant Francesco Feliciano.

111.    The Plaintiff pleads that the Defendant Bidault has deliberately misrepresented his involvement in achieving the above-mentioned reduction in the succession duties payable by the Plaintiff.  The Plaintiff pleads that the Defendant

Bidault's misrepresentation regarding the succession duty issues was intended to support his exorbitant and unjustified fees invoiced to the Plaintiff.

## AA.    Sales Contract of September 10, 2014

112.    On September 10, 2014 a Sales Contract relating to the Property was executed by the Purchaser Dr. Juan Montes-Ruiz and by Zaida Montalvo-Diaz on behalf of the Plaintiff pursuant to the terms of the 2006 Power of Attorney. According to the Sales Contract, the Purchase price for the Property is $300,000 and the purchase transaction is conditional upon the purchaser obtaining a mortgage loan of $240,000.

## BB.    Offer to Purchase the Property by Edwin T. Cruz

113.    By an email dated October 11, 2013, the Defendant Bidault forwarded a letter dated October 9, 2013 from Edwin T. Cruz containing an offer to purchase the Property for a purchase price of $300,000. This offer did not result in an agreement of purchase and sale with the Plaintiff.

## CC.    Appraisal of the Property of October 15, 2014

114.    An appraisal of the Property was completed October 15, 2014, by Enrique Ferrer-Urbina of Enrique Ferrer and Associates ("the 2014 Ferrer Appraisal"). In the 2014 Ferrer Appraisal, the appraised value given to the Property is $410,000 and the effective date of the appraisal is October 8, 2014. The indicated value in the 2014 Ferrer Appraisal based on the Replacement Cost Approach is $436,136.   The 2014 Ferrer Appraisal was prepared at the request of Dr. Juan Montes-Ruiz to support his mortgage application to Medicoop, a financial

corporation. The 2014 Ferrer Appraisal specifies that the "appraisal is made only for internal use of Medicoop and shall not be use[d] for any other purpose."

115.    The 2014 Ferrer Appraisal provides information on the Purchase Agreement between the Plaintiff and Dr. Juan Montes-Ruiz including the date of the contract (September 10, 2014), the purchase price of $300,000 and the fact that a deposit of $15,000 was paid by the borrower.

116.    The 2014 Ferrer Appraisal contains the following description of the neighborhood:

> The subject property is located in an urban residential sector of the San Juan Municipality. Neighborhood enjoys adequate location with convenient access to schools, shopping centers, principal highways, recreational facilities and employment areas. There are no apparent adverse factors which should affect the subject marketability. Other present land uses are vacant land, and public use.

117.    The Property's valuation of $410,000 in the 2014 Ferrer Appraisal, which was based on the Sales Comparison Approach, relies on the following comparable sales: (a) the first comparable sale related to a property located at Ocean Park # 2014 Italia St. San Juan PR 00927 with a sales of $515,000. This property is located 0.46 miles from the Property; (b) the second comparable sale relates to a property located at Ocean Park #2008 Italia St. San Juan, PR 00927 and the sales price for this property is $492,000. This property is located 0.49 miles from the Property; (c) the third comparable sale is located at Punta Las Marias #11 Doncella San Juan, PR 00927 and the sale price for that property is $520,000. This property is located 0.42 miles from the Property.

118.   The 2014 Ferrer Appraisal also contains the following observations:

> There are 3 comparable properties currently offered for sale in the subject neighborhood ranging in price from $490,000 to $850,000. There are 3 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $492,000 to $520,000.

119.   The 2014 Ferrer Appraisal contains a description of recommended repairs and improvements. The total cost of these improvements is the amount of $33,400.

120.   Without the knowledge of the Plaintiff, the Defendant Zaida Montalvo Ruiz and the Defendant Bidault made arrangements to allow Dr. Juan Montes-Ruiz to possess and occupy the Property for several months prior to the conclusion of the purchase transaction. Without any notification whatsoever to the Plaintiff, Dr. Juan Montes-Ruiz was given access to the Property in order to make certain repairs and replace "the interior and exterior doors with frames and fixtures".

121.   The Plaintiff pleads that the extraordinary secret arrangements made between the Defendant Zaida Montalvo-Diaz, the Defendant Bidault and Dr. Juan Montes-Ruiz breached the fiduciary and contractual obligations of the Defendants Zaida Montalvo-Diaz and Montalvo & Montalvo LLC under the terms of the 2006 Power of Attorney. The Plaintiff pleads that the unilateral decision made to provide access to the Property resulting in various renovations constituted a significant risk which should not have been the subject matter of any agreement without the consent of the Plaintiff.

122.    The Plaintiff pleads that the secret arrangements made with Dr. Juan Montes-Ruiz provide evidence of a wrongful relationship and association between the Defendants Zaida Montalvo-Diaz and Mr. Bidault and the prospective Purchaser, Dr. Juan Montes-Ruiz.

**DD.    Deed of Sale dated October 29, 2014**

123.    A deed of sale in the Spanish language was executed on October 29, 2014. This deed of sale was signed by the Purchaser Dr. Juan Montes-Ruiz and by Zaida Montalvo-Diaz on behalf of the Plaintiff pursuant to the 2006 Power of Attorney.

**EE.    Completion of the sale of the Property to Dr. Juan Montes-Ruiz**

124.    On October 29, 2014, the sale of the Property to Dr. Juan Montes-Ruiz was completed. As a result, a check in the amount of $238,501.58 was received on behalf of the Plaintiff and deposited in the account of the Plaintiff at Banco Popular. Medicoop, the Purchaser's lender, withheld an amount of $42,854.92 in respect to the unresolved CRIM (DEUDA AL CRIM HASTA 10/31/2014 to catastro#041-043-155-08-001) tax issue. Medicoop provided a loan of $255,000 to Dr. Juan Montes-Ruiz to enable him to complete the sale transaction. The loan arrangements with Medicoop were based on the 2014 Ferrer Appraisal.

125.    At the time of closing, the Plaintiff also paid an amount of $3,407 to Jose H. Martinez-Camacho in respect to their fees.

**FF.    Purchase of the Property by Dr. Juan Montes-Ruiz**

126.    In an email dated November 24, 2013, the Defendant Bidault urges the Plaintiff to seriously consider an offer to purchase from Dr. Juan Montes-Ruiz which is contained in a letter dated November 4, 2013, addressed to the Plaintiff.  In this letter, the following terms are presented: "Price $300,000 Down Payment $15,000.00." In his email of November 14, 2013, the Defendant Bidault underlines the fact that Dr. Juan Montes-Ruiz is a very serious person and that he is the Doctor of a prominent family in Puerto Rico.

**GG.    Breach of fiduciary duties by the Defendant Zaida Montalvo-Diaz**

127.    The meeting held on December 19, 2014, in the law offices of Eliseo Roques Arroyo in San Juan, Puerto Rico, which was attended by Jacques Gauthier as legal counsel of the Plaintiff, Eliseo Roques-Arroyo and the Defendant Zaida Montalvo-Diaz, the Defendant Zaida Montalvo-Diaz admitted that despite her responsibilities under the 2006 Power of Attorney, she made no decisions relating to any of the matters described in the 2006 Power of Attorney because the Defendant Bidault had assumed all the powers and she was merely following his orders from year to year.

128.    During the aforesaid meeting held on December 19, 2014, the Defendant Zaida Montalvo-Diaz stated that she had not contacted or retained any real estate professionals in conjunction with the sale of the Property. As a result, the Property was never listed for sale in Puerto Rico.

129.    During the aforesaid December 19, 2014, meeting in the law offices of Eliseo Roques Arroyo, the Defendant Zaida Montalvo-Diaz stated that her decision in

respect to the involvement of real estate professionals was based on the instructions she received from the Defendant Bidault. The Defendant Zaida Montalvo-Diaz explained that she was specifically instructed by the Defendant Bidault to proceed with the selling of the Property without the involvement of any real estate agents. She added that these instructions were given by Mr. Bidault in order to reduce the cost of selling the Property. The Defendant then stated that the only step taken to market the Property was the placing of a "For Sale" sign on the premises.

130.    During the meeting of December 19, 2014, the Defendant Montalvo said she was surprised that the belief of the Plaintiff that the Defendant Bidault was a "local advisor". She stated that the Defendant Bidault had not been a resident in Puerto Rico for many years. Although she did not remember the date of her last meeting with the Defendant Bidault, she stated that she had not met him for at least four or five years. She added that the Plaintiff's belief that the Defendant Bidault was "correspondent sur place" was not well founded since he had relocated to the United States many years earlier.

131.    During the December 19, 2014 meeting in the offices of Mr. Roques Arroyo, the Defendant Zaida Montalvo-Diaz provided information in respect to the relationship between the Defendant Zaida Montalvo-Diaz and the Purchaser, Dr. Juan Montes-Ruiz, she underlined the fact that the Purchaser had developed a close relationship with the Defendant Mr. Bidault over a period of many years. She also mentioned the fact that the Purchaser, Dr. Juan Montes-Ruiz, had previously made an

offer to purchase the Property for $900,000.  At that time, she also explained that title

in the Property had not yet been transferred from the Meyran Estate to the Plaintiff.

132.    It was during the December 19, 2014 meeting that the Defendant Zaida

Montalvo-Diaz also disclosed the fact that an offer was made by a friend of her

husband for an amount of $475,000. According to the Defendant Zaida Montalvo-

Diaz, this offer was rejected by the Defendant Bidault because it involved the

granting of a mortgage by the owner of the Property. At the time this offer was

rejected by the Defendant Bidault, the Defendant Montalvo was told that he preferred

to sell the Property to Dr. Juan Montes-Ruiz.

133.    The Plaintiff pleads that the failure to retain real estate brokers or

professionals by the Defendants Zaida Montalvo-Diaz, Aurora Montalvo-Diaz and

Montalvo & Montalvo LLC contravened the fiduciary and contractual duties set out

in the 2006 Power of Attorney.  The Defendants Zaida Montalvo-Diaz, Aurora

Montalvo-Diaz and Montalvo & Montalvo LLC were required to take all of the

appropriate and customary steps to obtain the highest purchase price for the Property.

The failure to take these steps was wrongful and negligent and it caused prejudice and

damages to the Plaintiff since the sale price of the Property was materially less than

the market value of the Property in 2014.

134.    The Plaintiff pleads that the Defendant Zaida Montalvo-Diaz, Aurora

Montalvo-Diaz and the Defendant Montalvo & Montalvo LLC breached their

contractual and fiduciary duties by relinquishing and transferring all of the obligations

contained in the 2006 Power of Attorney to the Defendant Bidault.

**HH.    Transfer of Funds to the Plaintiff**

135.    On December 19, 2014, the Defendant Zaida Montalvo-Diaz made the arrangements necessary to deliver a certified check in the amount of $250,000 made payable to the Plaintiff. This check was delivered to Jacques Gauthier, the legal counsel of the Plaintiff, pursuant to written instructions received from the Plaintiff.

**II.    Termination of Mandate of the Defendant Zaida Montalvo-Diaz**

136.    On December 23, 2014, the Plaintiff notified the Defendant Zaida Montalvo-Diaz that she was no longer authorized to make any decision or take any action in the name of or for the benefit of the Plaintiff without the consent of Jacques Gauthier, the sole authorized representative of the Plaintiff. In an email dated January 26, 2015, Jacques Gauthier notified the Defendant Zaida Montalvo-Diaz that she had "no authority, power or rights to make any further payment from the accounts of ADP at Banco Popular or any other account without specific written authorization from ADP."

137.    The Plaintiff pleads that by virtue of the legal relationships with the Defendants Zaida Montalvo-Diaz, Aurora Montalvo-Diaz and Montalvo & Montalvo LLC under the terms of the 2006 Power of Attorney, the Defendants Zaida Montalvo-Diaz, Aurora Montalvo-Diaz and Montalvo & Montalvo LLC are in breach of the trust established under the terms of the 2006 Power of Attorney. As a result of such breach, they have been unjustly enriched to the detriment of the Plaintiff. The Plaintiff, therefore, says that the Defendants Zaida Montalvo-Diaz, Aurora Montalvo-

Diaz and Montalvo & Montalvo LLC are liable for its damages arising out of such breach.

138.    In the alternative, the Plaintiff pleads that the Defendants Zaida Montalvo-Diaz, Aurora Montalvo-Diaz and Montalvo & Montalvo LLC by their actions have been unjustly enriched by gaining commercial and financial benefits at the Plaintiff's expense.  They are, therefore, liable in restitution for the value of the Plaintiff's expenses on a quantum merit basis.

139.    As a result of the breaches by the Defendants Zaida Montalvo-Diaz, Aurora Montalvo-Diaz and Montalvo & Montalvo LLC of their obligations and fiduciary duties under the 2006 Power of Attorney, the Plaintiff has suffered losses and damage including:

a)      loss of the proceeds of the sale of the Property as a result of the sale of that Property for a purchase price that was significantly under the its market value;

b)      loss of Profits arising from the loss of opportunity to place the additional proceeds of sale after the sale of the Property.

140.    The Plaintiff seeks the reimbursement of all amounts wrongfully invoiced and received by the Defendants Zaida Montalvo-Diaz, Aurora Montalvo-Diaz and Montalvo & Montalvo LLC, Bidault and Mayer Associates LLP .

141.    The Plaintiff pleads that the Defendants Zaida Montalvo-Diaz, Aurora Montalvo-Diaz and Montalvo & Montalvo LLC, Bidault and Mayer Associates LLP have acted in a highhanded and contumelious fashion for their own gain and have thereby caused the Plaintiff substantial damage.

## V.   FEDERAL DECLARATORY JUDGMENT ACT

142.   Pursuant to the Federal Declaratory Judgment Act of 1934, 28 U.S.C.

§2201, *et. seq.*:

> In a case of actual controversy within its jurisdiction…
> any court of the United States, upon the filing of an
> appropriate pleading, may **declare the rights and other**
> **legal relations of any interested party seeking such**
> **declaration**, whether or not further relief is or could be
> sought. Any such declaration shall have the force and
> effect of a final judgment or decree and shall be
> reviewable as such.  (Emphasis added)

143.   Thus, and pursuant to Fed. R. Civ. P. 57, and 28 U.S.C. §2201, Plaintiff

ADP requests, as part of the various other forms of relief sough in the instant

*Complaint*, that this Honorable Court declare the rights and obligations of the parties

under the various agreements and obligations set forth herein.

## VI.   REQUESTED RELIEF AS TO EACH NAMED DEFENDANT

144.    Based on the foregoing facts, Plaintiff ADP claims against Defendants

Zaida Montalvo-Diaz, Aurora Montalvo-Diaz and Montalvo & Montalvo LLC:

> (i)     a declaration that they have breached their fiduciary and
> contractual obligations to the Plaintiff, and have acted in
> bad faith in connection thereto;
>
> (ii)    damages in the amount of $500,000 for breach of the
> terms of the Power of Attorney and for breach of their
> fiduciary duties to the Plaintiff;
>
> (iii)   general damages for negligent misrepresentation in the
> amount of $200,000, as well as for contractual bad faith;
>
> (iv)    an order requiring the reimbursement of all amounts
> wrongfully invoiced to the Plaintiff from 2005 to 2014;

      (v)     further and alternatively an accounting of all funds they received as a result of their position as trustees and attorneys under the Power of Attorney.

      (vi)     pre-judgment and post-judgment interest;

      (vii)     its costs of this action; and,

      (viii)     such further and other relief as this Honorable Court deems proper and just.

145.   Based on the foregoing facts, Plaintiff ADP claims against Defendants Bidault and Mayer Associates LLP :

      (i)     damages in the amount of $500,000 for breach of fiduciary duties and contractual obligations to the Plaintiff, and have acted in bad faith in connection thereto;

      (ii)     general damages for negligent representation in the amount of $200,000, as well as for contractual bad faith;

      (iii)     an order requiring the reimbursement of all the amounts wrongfully invoiced to the Plaintiff from 2005 to 2014;

      (iv)     further and alternatively an accounting of all funds they received as a result of their position as business advisors of the Plaintiff;

      (v)     pre-judgment and post-judgment interest;

      (vi)     its costs of this action; and,

      (vii)     such further and other relief as this Honorable Court deems just and proper.

146.   Based on the foregoing facts, Plaintiff ADP claims against the Defendant Juan Montes-Ruiz:

    (i)    a declaration that the property located at 2164 Park Boulevard St., San Juan, Puerto Rico (the "Property") was improperly conveyed to Defendant Montes-Ruiz, and the transfer to said Defendant is null and void, and that title to the Property should revert to Plaintiff, who has the right to recover ownership and possession of the Property;

    (ii)    an order requiring him to return possession of the Property to the Plaintiff;

    (iii)    damages for negligent representation and wrongful interference with Plaintiff's property rights in the amount of $300,000;

    (iv)    pre-judgment and post-judgment interest;

    (v)    its costs of this action; and,

    (vi)    such further and other relief as this Honorable Court deems just and proper.

147.    Plaintiff demands trial by jury.

**WHEREFORE,** Plaintiff **Association Diocésaine de Paris** respectfully requests that this Honorable Court enter judgment in its favor, GRANT the relief sought in the causes of action set forth herein, and impose upon the Defendants an award for costs, expenses and attorney's fees, together with any other relief which this Honorable Court may deem just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico on this 8th day of May 2015.

*s/Liz Marie Cruz-Jiménez*
**LIZ MARIE CRUZ-JIMÉNEZ, ESQ**
USDC No. 214702
P.O. Box 191637

San Juan, PR 00919-1637
Tel. (787) 522-2013
Fax (787) 522-2010
E-mail: cjlizmarie@hotmail.com